**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 2:18CR00352-001** |
| **CARL MASTERS** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO
DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

**I.   INTRODUCTION**

On April 25, 2019, the Defendant pled guilty to both counts of the indictment, charging him with: 1) engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g); and 2) a conspiracy to advertise child pornography, in violation of 18 U.S.C. § 2251(d).  See DE 121 (minute entry of change of plea hearing).  The Court accepted the Defendant's guilty plea, and sentencing is currently set for September 24, 2019.  See DE 141.

**II.   THE OFFENSE CONDUCT**

This case arose from an FBI investigation into offenders engaged in what is known as "crowdsourcing" child pornography.   In such a scheme, several offenders work together toward the common purpose of sexually exploiting minors over the internet, obtaining images and videos of that sexual exploitation, and then sharing that material within the group of offenders. These schemes tend to be highly organized, with participants having clearly defined roles.

The defendant Carl Masters was part of a group which engaged in crowdsourcing child pornography on Discord, an online chat and messaging service.   Discord permits users to create "servers," essentially a chatroom that Discord users can join and then communicate with each other through messages visible to all other users present in that room.   Users can also exchange private

messages directly with other users. Users may also post files or links to files in the chatrooms. A Discord user created a server called Camgirls that was dedicated to communications about minors engaging in sexually explicit conduct on web camera and exchanging child pornography of those minors. When Camgirls was shut down in 2017, the same group migrated to another server called Thot Counselors.

The Camgirls and Thot Counselors servers were organized into several different text channels—which are essentially sub-chatrooms dedicated to a particular topic—many of which corresponded to video-streaming and image-sharing services popular with minors. In general these chatrooms were dedicated to the dissemination of videos that had been broadcasted over the corresponding video-streaming platform. Other text channels were dedicated to general discussions of rules for posting and technology issues or tips. .

The overwhelming majority of the discussion in the Camgirls and Thot Counselors servers focused on the use of video-streaming and social-media services to obtain sexually-explicit videos and images of young females, and the distribution of those videos and images among members of the group, typically by posting hyperlinks which led to an internet location where such videos could be downloaded. It was understood among the members that the purpose of the group was to acquire "original content" depicting minors engaging in sexually explicit conduct and share that content with the group.

The members of the servers were acutely aware of the potential for law enforcement to observe their activities and engaged in techniques to evade such scrutiny. For example, they discussed using a virtual private network (VPN) to mask their internet protocol (IP) addresses: "Just the fact that we're all hanging in here, which is a chatroom where underage sexual content is shared around is enough reason for one to get a VPN." They developed a system whereby,

instead of posting full hyperlinks which they thought could be more easily detected by Discord or law enforcement, they posted just a particular unique portion of a link that members knew how to plug into a program to obtain the desired file.

The defendant was an active member of both Camgirls and Thot Counselors and used the screenname "Harmon.",  He reached the rank of "Senior Council" on Thot Counselors —the highest rank in the group—which allowed him access to additional text channels where more rare and coveted child pornography was shared.   This rank also gave him the power to invite others to the server and remove current users.   At one point, Discord deleted the defendant's account (presumably for engaging in illegal activity that violated their terms of service), but the Defendant created a second account and continued to access the server.

Discord server records show that the defendant made 250 posts on Camgirls and 550 posts on Thot Counselors.   His posts included chatting with other members about the sexual exploitation of children, uploading files directly of minors engaged in sexually explicit conduct, and posting links to files located elsewhere of minors engaged in sexually explicit conduct.   The defendant posted videos of victims who appear to be as young as 10 years old.   The links posted by the defendant often came from one particular streaming service LiveMe, which—as compared to other platforms used by the members of the group—was known to be popular with younger adolescents and teenagers.

During the execution of a federal search warrant at the defendant's residence, defendant admitted to being on Discord "almost every day."   He confirmed he viewed child pornography of minors who were as young as 10 years old on the Discord servers.   In order to avoid law enforcement detection, the Defendant used a VPN and "J Downloader," a special downloading tool used to download LiveMe links.

Not only did the defendant share videos of minors on Discord; he also communicated directly with minors and enticed minors to produce sexually explicit conduct. The defendant admitted that he posed as 16 year-old female with sandy blond hair to coerce the children to send him sexually explicit images and videos of themselves. The defendant also explained that he had previously posed as a teenage male and pretended to be in relationships with the minors he victimized, but, as he put, it became "too emotionally taxing" on him, so he switched to using a girl. He also told his fellow Camgirls members that using a girl was more effective in a post on Camgirls: " . . . I found like 75% of girls would be bi for the right chick . . . way easier to get win even if the girl is mostly straight cuz its like . . might as well be in the locker room just a girl etc etc." He used photos and videos of real minors to trick his victims into believing he was in fact a minor female—a technique known as catfishing which was discussed on the Camgirls and Thot Counselors servers.

The defendant's digital devices contained thousands of images and videos depicting minors. The files date back to 2004. There is a total of 600,090 files in a folder called "Cap"— short for capture, which refers to the process of recording videos of minors on live web camera. The files appear to be sorted based on the website or platform that was used to create the content and by username. One sub folder alone contains approximately 32,000 images and videos, most of which appear to depict minors on web camera. Much of the content depicts minors engaged in sexually explicit conduct. The defendant also had a folder labeled "loops," which refers to the technique of playing a pre-recorded video of a minor victim to another minor in a way that makes the minor believe she is communicating live with a peer. This is a method commonly used by groups of this type to entice children to produce child pornography.

**III.    SENTENCING CALCULATION**

  *A.  Authorized Statutory Penalties*

The maximum sentence authorized by law for violating of 18 U.S.C. § 2252A(g) is life imprisonment, with a twenty (20) year mandatory minimum term of imprisonment. Supervised release may be ordered following imprisonment for as much as life, and must be ordered for a minimum term of five years. The Court may further impose a $250,000 fine and must further impose a $100 special assessment as to each count, as well as an additional $5,000 special assessment as to each count if the defendant is determined to be non-indigent.

The maximum sentence authorized by law for violating of 18 U.S.C. § 2251(d) and (e) is thirty years' imprisonment, with a mandatory minimum fifteen (15) year term of imprisonment. Supervised release may be ordered following imprisonment for as much as life, and must be ordered for a minimum term of five years. The Court may further impose a $250,000 fine, and must further impose a $100 special assessment as to each count, as well as an additional $5,000 special assessment as to each count if the defendant is determined to be non-indigent.

  *B.  Guidelines Calculation*

As reflected in the presentence investigation report (PSR) prepared by the Probation Office in advance of sentencing, the applicable Sentencing Guidelines imprisonment range is life. The defendant has reported three objections to the Sentencing Guidelines calculation contained in the PSR. For the reasons described below as to each objection, the Government respectfully submits that the defendant's objections are not well-founded, and should therefore be overruled.

   1.   *First Step Act is Inapplicable to the Above Offenses*

The offenses for which the Defendant has been convicted make him ineligible for evidence-based recidivism reduction program incentives. Section 101 of the First Step Act of 2018,

codified at 18 U.S.C. § 3632(d), mandates "evidence-based recidivism reduction program incentives" for federal prisoners in addition to the previously-existing good conduct credit of 54 days per year. Subsection (d)(4)(D) contains a lengthy list of offenses for which inmates are ineligible to earn the additional sentence reductions, including both 18 U.S.C. §§ 2251 and 2252A.

        *2.      Counts 1 & 2 Should Group as the Conduct is Part of the Same Common Scheme and Plan*

The conduct underlying Counts 1 and 2 is part of the same scheme and plan to entice minors to produce child pornography on live streaming websites and to share that child pornography on Discord. The PSR therefore appropriately grouped Counts 1 and 2. And the offense level is not increased based on this grouping, thus the objection by the Defendant is moot.

        *3.      USSG §4B1.5(b)(1) Applies Because the Defendant Engaged in a Pattern of Activity Involving Prohibited Sexual Conduct*

The Defendant's instant offense of conviction is a covered sex crime. The application notes to Section 4B1.5 define a <u>covered sex crime</u> to include "an offense, perpetrated against a minor, under . . . chapter 110 . . . not including trafficking in, receipt of, or possession of, child pornography." § 4B1.5, note 2. Here, the defendant was convicted of the Chapter 110 offense of engaging in a child exploitation enterprise, which involved the production of child pornography over web camera. The application notes further state that a pattern of activity means that "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor . . . without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion. § 4B1.5, note 4(B). Prohibited sexual conduct is defined to include the "production of child pornography." § 4B1.5, note 4(A). The defendant regularly chatted one on one with minors and deceived and enticed them to produce and send the defendant child pornography which he then shared on Camgirls and

Thot Counselors. The Defendant communicated with minors and produced child pornography in this same manner for almost a decade over multiple platforms. Accordingly, the Defendant qualifies for the 5-level enhancement under U.S.S.G. § 4B1.5.

## IV. ANALYSIS OF STATUTORY FACTORS

For the reasons outlined below, a sentence of fifty (50) years imprisonment followed by lifetime supervision is sufficient, but not greater than necessary, in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).

### 1. *Nature and Circumstances of the Offenses*

For years, the Defendant sexually exploited minors over the internet with nothing more than a single laptop and external hard drive. Out of all the Defendant's charged in this child exploitation enterprise and conspiracy, the Defendant's length of conduct is the most outrageous. The Defendant mastered a skill, that being the ability to manipulate and trick children into fulfilling his sick and twisted sexual appetite. Unquestionably, his crimes are serious and his conduct reprehensible.

The Defendant and the rest of his cohort orchestrated a massive campaign whose sole mission was the abuse and exploitation of minors. They found vulnerable children, manipulated and threatened them, and then used those children to satisfy their sexual appetites. They did so without regard for the humanity of their victims or the harm they would surely inflict.

The Defendant was instrumental in the creation of large quantities of "original content" for a revolting marketplace of child exploitation. Day in and day out he worked tirelessly to interact one on one with children in an effort to convince the minors to perform sexual acts over live streaming software so that he could "cap" the conduct and share it with his fellow "perverts" and "pedophiles" as the group referred to themselves. All day along the members of this group sat

around their computers and engaged in banter about sexually abusing children over the internet. To this group, it was a game to see who could abuse the most minors. The Defendant used a variety of techniques to trick minors into engaging in this conduct. For example, he posed as a 16 year-old female named Willow Gray who he described as having sandy blond hair. He also used the looping technique, meaning he used videos that he captured of other minors engaged in sexual activity and then posed as those minors, normalizing the behavior for his current victims in an effort to get them to perform sexual acts. The Defendant's victims were among societies most vulnerable. The children the Defendant abused were pawns in a sick game and he used them to fulfill his sexual desires and those of his fellow Discord members. The Defendant's actions demand a rebuke from this Court in the strongest possible terms.

      2.      *History and Characteristics of the Defendant*

This is not the first time the defendant has been caught engaging in this type of behavior. In fact, the defendant was investigated by the FBI in 2014 for the exact same conduct. PSR ¶ 7 n.1. He was confronted at that time and admitted to chatting with minors on LiveMe and downloading child pornography. But did the FBI showing up at his house deter him at all? No. He continued to engage in the same type of illegal conduct for over 3 more years. Until law enforcement caught him again.

Not only has he been caught twice for this behavior, but it is clear from the forensic examinations that were performed on his devices that the Defendant had been engaged in this type of activity since at least 2004 based on the dates associated with the video files he stored and sorted. Further, the Defendant appears to have organized some of his produced child pornography by the years such conduct was recorded. Those folders date back to 2009.

Based on this conduct, it is obvious that the Defendant will not or cannot control himself. Sexually exploiting children over the internet where he can hide his true identity is a way of life for the Defendant.

*3.     Need for Sentence to Afford Adequate Deterrence*

Unfortunately, but undeniably, there are others who share the defendant's sexual interest in children, and who have both the opportunity to sexually exploit and manipulate children over the internet in the same way as the Defendant. The sentence imposed by the Court must discourage those persons from acting on those opportunities by demonstrating the substantial penalties awaiting defendants convicted of these crimes and especially those defendants who have been engaged in such activity for extended periods of time like the Defendant in this case.

Both specific and general deterrence call for a significant sentence in this case to send a message that engaging in an enterprise and conspiracy that targets children and causes extensive harm—beyond what an individual could accomplish—will result in a federal prison term that takes one far into old age, if not for the rest of their life. Groups that work together to target children online are only becoming more common and more savvy at leveraging technology to increase their production and hide from law enforcement. Thus, the message must be sent clearly to other offenders.

*4.     Need for Sentence to Protect Public from Further Crimes of Defendant*

The victims of the defendant's crimes are among the most vulnerable in society—children. Some not yet even teenagers. These children deserve to be protected from further exploitation by the defendant, who has amply demonstrated his own sexual desire for minor children, his skill at deceiving minor children to get them to produce child pornography, and his dedication over

several years to gratifying that desire.    The defendant was able to sexually exploit a large number of minor children for at least a decade.

That the defendant alone exploited such a large number of children over the years is almost hard to imagine.    But working with his co-conspirators on Camgirls and Thot Counselors allowed him to multiply his efforts.    The number of children that were able to be victimized by these joint efforts cannot be precisely determined, but it numbers in the hundreds.    The risk the defendant poses to children is immense.    The only way to protect children from the Defendant is to keep him behind bars for a very long time.    The public has a right to be protected from him and others like him who have demonstrated an unequivocal desire to engage in sexual activity of all kinds with children.

     *5.     Need to Avoid Unwarranted Sentencing Disparities*

This district has encountered cases involving the production of child pornography and the enticement of children by adults.    But the child exploitation enterprise and crowdsourcing scheme of this case is new.    Unfortunately, it is not the first time such a case has been prosecuted in the federal system.    There are other cases where adult men, like the Defendant, have misrepresented their identities in an effort to get hundreds of children to engage in sexually explicit activity so that others could record the activity without the child's knowledge or consent.

One of the first cases involved 11 defendants in the Eastern District of Virginia.    The sentences in that case ranged from 2.5 years to 21 years, with the sentences at the lower end being a product of charging and plea decisions, as well as cooperation and mental health issues. Subsequently, there were two different crowdsourcing cases charged in the Eastern District of Michigan.    The first one involved 6 defendants, 5 of which were sentenced in EDMI to terms of imprisonment ranging from 20 years to 50 years.    One of the defendants was separately sentenced

in the District of Nebraska to 35 years. The second case in the Eastern District of Michigan resulted in another six defendants being sentenced in July 2018 by a different judge to terms of imprisonment ranging from 32 to 41 years. In each set of cases, some of the sentences were a product of motions by the United States in recognition of cooperation. In the District of South Carolina, members of a similar crowd-sourcing scheme were sentenced in August 2018 to between 18 and 40 years imprisonment. A few months ago, Cory Crosby who was also a member of the current child exploitation enterprise and conspiracy to advertise child pornography, was sentenced to 25 years with lifetime supervised release in the Western District of Washington. This chart contains the sentences in these various crowdsourcing cases, organized by decreasing length of imprisonment term:

| **Defendant** | **Age** | **Count(s) of conviction** | **Sentence** | **District** | **Judge** |
|---|---|---|---|---|---|
| Garrison, John | 52 | Child exploitation enterprise | 50 years; lifetime S/R | E.D. Mi. | Hon. Judith E. Levy |
| Dominguez-Meija, Felipe | 31 | Child exploitation enterprise | 41 years; 5 years S/R | E.D. Mi. | Hon. Stephen J. Murphy III |
| Gressette, Brandon | 33 | Conspiracy to produce child pornography; production (x2 based on hands-on abuse of two victims) | 40 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Kovac, Terry | 49 | Child exploitation enterprise | 37 years; 5 years S/R | E.D. Mi. | Hon. Stephen J. Murphy III |
| Hennerberg, Brandon | 31 | Child exploitation enterprise | 35 years; lifetime S/R | D. Neb. | Hon. Richard G. Kopf |
| Fuller, Justin | 37 | Child exploitation enterprise; conspiracy to produce; production (x5); conspiracy to receive; conspiracy to access with intent to view; enticement (x5) | 35 years; 5 years S/R | E.D. Mi. | Hon. Judith E. Levy |
| Eisley, Noel | 38 | Child exploitation enterprise | 35 years; | E.D. Mi. | Hon. Stephen J. |

11

| Defendant | Age | Count(s) of conviction | Sentence | District | Judge |
|---|---|---|---|---|---|
| | | | 10 years S/R | | Murphy III |
| Robinson, Eric | 42 | Child exploitation enterprise | 34 years; 10 years S/R | E.D. Mi. | Hon. Stephen J. Murphy III |
| Phillips, William | 39 | Child exploitation enterprise | 33 years; 5 years S/R | E.D. Mi. | Hon. Stephen J. Murphy III |
| Massey, Bret | 47 | Child exploitation enterprise | 32 years; 10 years S/R | E.D. Mi. | Hon. Stephen J. Murphy III |
| Gersky, James | 35 | Conspiracy to produce child pornography; conspiracy to distribute and receive child pornography | 30 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Fox, Steven | 40 | Conspiracy to produce child pornography; conspiracy to distribute and receive child pornography | 30 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Ellis, Sean | 44 | Conspiracy to produce child pornography; conspiracy to distribute and receive child pornography | 30 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Dougherty, Thomas | 54 | Child exploitation enterprise | 26 years; lifetime S/R | E.D. Mi. | Hon. Judith E. Levy |
| Crosby, Cory (Camgirls member) | | Child exploitation enterprise | 25 years; lifetime S/R | W.D. Wa. | Hon. Benjamin H. Settle |
| Augustin, Michael | 45 | Conspiracy to produce child pornography; conspiracy to distribute and receive child pornography | 25 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Morgan, William J. | 36 | Conspiracy to produce | 21 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Hendrix, Brian K. | 42 | Conspiracy to produce, conspiracy to receive & distribute, conspiracy to possess & access with intent to view | 21 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Funk, Stephen | 35 | Conspiracy to receive & distribute | 21 years; 20 years | E.D. Va. | Hon. T.S. Ellis III |

| Defendant | Age | Count(s) of conviction | Sentence | District | Judge |
|---|---|---|---|---|---|
| | | | S/R | | |
| Becovic, Dejan | 24 | Conspiracy to produce child pornography; conspiracy to distribute and receive child pornography | 20 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Napier, Virgil | 54 | Child exploitation enterprise | 20 years; 5 years S/R | E.D. Mi. | Hon. Judith E. Levy |
| Nicart, Dantly | 39 | Child exploitation enterprise | 20 years; deportation | E.D. Mi. | Hon. Judith E. Levy |
| McNevin, Christopher | 37 | Conspiracy to produce | 19 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Cripe, Jonathan | 29 | Conspiracy to produce child pornography; conspiracy to distribute and receive child pornography | 18 years; lifetime S/R | D. S.C. | Hon. Richard M. Gergel |
| Soto, Jonathan | 26 | Conspiracy to produce | 18 years; 5 years S/R | D. N.J. | Hon. Freda L. Wolfson |
| Zwengel, Carl | 51 | Conspiracy to produce | 18 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Hitosis, Karlo | 32 | Conspiracy to produce | 18 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Cortez, Allan | 34 | Conspiracy to produce | 17.5 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Hancock, James E. | 45 | Conspiracy to receive & distribute | 7.5 years; 10 years S/R | E.D. Va. | Hon. T.S. Ellis III |
| Smith, Milton | 34 | Conspiracy to produce (5K motion) | 2.5 years; 15 years S/R | E.D. Va. | Hon. T.S. Ellis III |

The sentences imposed in the Eastern District of Virginia are, collectively, outliers because all were imposed by one judge and none exceeded 21 years. By contrast, five different judges in four different districts (EDMI, DNE, DSC and WDWA) looked at similar facts and concluded that sentences of 25 years or more were appropriate more often than not. In fact, the median

13

sentence of defendants outside of EDVA is over 30 years and is the product of decisions by six different judges. And if the sentences for defendants who cooperated were removed, the median would be substantially higher. The Defendant's conduct in this case demands a sentence in the highest range.

### 6. *Sentencing Guidelines Range*

18 U.S.C. § 3553(a)(4) instructs a sentencing court to consider the Sentencing Guidelines range applicable to the defendant. The Sentencing Guidelines range of life reflects the seriousness of the crimes committed by this defendant and call for a significant sentence.

## V. **CONCLUSION**

The defendant engaged in the concerted and sustained sexual exploitation of children on the internet for several years, harming hundreds of children. In light of the seriousness of his offense and the other § 3553(a) factors, the United States requests the Court impose a sentence of fifty (50) years imprisonment followed by lifetime supervised release.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

s/Seth Schlessinger
Seth M. Schlessinger
Assistant United States Attorney

Kaylynn N. Foulon
Lauren Britsch
Trial Attorneys, Criminal Division

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 17, 2019, I filed a copy of the foregoing document with the Clerk of the Court, and served a copy upon all counsel of record, via CM/ECF.

s/Lauren Britsch
Lauren Britsch
Trial Attorney